193 So.2d 156

**Lee Charles MIGGINS**

v.

**STATE.**

1 Div. 156.

Court of Appeals of Alabama.

Dec. 20, 1966.

Stephen G. Crawford, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Mobile County, Alabama, in three separate cases of robbery at the Spring Term of the 1960 Grand Jury. Represented by counsel, appellant entered a plea of guilty as charged in each of the three cases. On October 31, 1960, he was found guilty and his punishment fixed by a jury at ten years in the State penitentiary in each case. There was no appeal taken from the Circuit Court of Mobile County.

This is an appeal from a denial on April 19, 1966, of a petition for writ of error coram nobis filed by appellant alleging that his conviction was in violation of his constitutional rights and that the court erred in denying his petition which he contends should have been granted on any one of the three following grounds:

"1. The introduction to the jury of a coerced confession.

"2. The denial of counsel at the preliminary hearing.

"3. The totality of circumstances which clearly involved a denial of due process under the Fourteenth Amendment of the Constitution."

Appellant testified that he was convicted on the three cases of robbery and was interrogated regarding commission of these offenses while serving time in jail for a misdemeanor (stealing eggs), by three Mobile Police Officers, Detective Simmons, Mr. Burch and Mr. Delhomme. He stated on the coram nobis hearing that he was guilty in one of the cases but had nothing to do with the other two. He testified that he was interrogated for four to five hours the first time and that the interrogation continued throughout that week; that he requested permission to call an attorney but this was denied each time; and that he also requested permission to call his family, which was also denied each time.

Appellant further contends that he was never advised of his right to remain silent or of the fact that any statements he might make regarding the crimes could be used against him.

Appellant also testified that he requested the right to call counsel before his preliminary hearing, which request was denied. He stated that at arraignment on April 11, 1960, and prior to this time, the trial court did appoint the Honorable George McCain and the Honorable Ronald Slepian to represent him. Appellant stated that the cause was continued until the Fall 1960 Term and that he pled guilty at this time because he was told that if he did not plead guilty he would receive the maximum punishment ("get ten years in one case and send me to prison and block my parole and bring me back and try me again and block that parole"). He stated that this confession was introduced in evidence at his trial when punishment was fixed by the jury. Appellant testified on cross-examination that he pled guilty because he had "no choice" and that he did not tell the judge he wanted to plead guilty because he was not asked and when his lawyer entered a plea of guilty for him, he didn't say anything because he didn't know what to say.

The State's first witness was Ronald Slepian who testified that he and George

McCain, Attorneys, were appointed in the spring of 1960 to represent appellant and that they did consult with him. He stated that the case was set for the following day, at which time pleas of not guilty were entered in each case and that the cause was continued until October, 1960. The attorney testified in pertinent part as follows:

"* * * we were appointed right shortly before the arraignment * * * and we talked with him in the jailhouse right prior to the arraignment, and it was our recommendation after we talked with him that he plead not guilty.

* * * * * *

"If my memory serves me, we spoke to him on more than one occasion, I talked with him and Mr. McCain did, I think we investigated the various charges and either together or separately on several occasions talked with him between the time of the arraignment and the final trial.

"* * * I do recall discussing this with him in the solicitor's office, trying to see if there was going to be any way to resolve this or whether we were going to trial, we were ready to go to trial and we did advise Lee Charles Miggins of his rights, what would have to be proved, we discussed what his wishes were, the facts with him, and if my recollection serves me he requested we change his plea from not guilty to guilty. There were 3 or 4 charges that were filed away that were not brought up and there were pleas of guilty on 3 charges, I think there were some 6 or 8 charges of armed robbery if I recall correctly. I think the sentence was 30 years, 10 years in each case.

"Q. Did you ever advise this man that he had to plead guilty in these 2 cases?

"A. No sir I never advised him such thing.

"Q. Have you ever done such thing in your life?

"A. No sir.

"Q. Was it his own desire to plead guilty?

"A. If my recollection serves me, that is correct.

"Q. Your best judgment, after appraising the whole situation, that was the best avenue of approach?

"A. Yes, sir, after talking with the witnesses, there were witnesses in court on several occasions on all of these cases, and this was his wish, his desire."

On cross-examination, Mr. Slepian testified in pertinent part as follows:

"Court: Did he at any time say anything to you about being forced to make a confession?

"Mr. Slepian: No sir.

"Court: Did he tell you that they beat him up or threatened to?

"Mr. Slepian: No sir.

* * * * * *

"Court: You did discuss with him about the confession?

"Mr. Slepian: Yes sir we discussed that at some length, I am certain.

"Court: He never told you he was forced to make it?

"Mr. Slepian: No sir, if he had we would have taken different steps I'm certain. Now judge let me state this, in deference to Lee Charles Miggins, there were times when I am reasonably sure he may have talked with George McCain when I was not there and other times when I talked with him when George McCain was not there. I don't know what was said on those occasions.

"Court: Alright, go ahead with your cross-examination.

"Q. Mr. Slepian, do you recall whether or not he told you about the confes-

sion or are you just sure that if he had you would have acted differently?

"A. No if he—tell me what about the confession?

"Q. That there had been coercion, that he tried to get a lawyer during the time, this week when he was being interrogated and they wouldn't let him call a lawyer?

"A. I recall nothing about any request for a lawyer at any time prior to us being appointed, I don't even know whether the matter was discussed, I have no independent recollection of it ever being mentioned."

The State's next witness was Jack K. Clark who testified that he was a member of the Mobile Police Department and that he knew appellant and was present when a confession was taken and a statement signed by appellant in regard to one of the three cases. He stated that appellant was not coerced in any way in making this confession. In pertinent part, he testified as follows:

"Q. Do you recall that instant where a confession was taken from him pertaining to these cases we have been talking about in here this afternoon?

"A. Yes I do, I believe it was in March. Detective Simmons typed the statement and asked me to read it to Miggins which I did, and asked him if that was true and he said yes, pertaining to Bell Finance Company.

"Q. Did anybody threaten him in your presence?

"A. No.

"Q. Did anybody offer him any inducement or reward to sign this confession?

"A. No.

"Q. Was he coerced in any way. To make this confession?

"A. No.

"Q. Did he appear to make it freely and voluntarily?

"A. He did for the time I was in there, the door was open when I went in, Detective Simmons was typing it. I was working on something else. Simmons asked me to come in there and read the statement, I read the statement to him and asked him if it was true and he said it was and he signed it and we signed it as witnesses.

"Q. Did he make any complaints to you at that time?

"A. He did not."

Appellant contends in his brief that coercion was constituted by the prolonged grilling of appellant without benefit of counsel, by the refusal of police officers to let him call a lawyer or to call his family after repeated requests, and by the failure of the officers to warn appellant of his right to remain silent.

 An examination of the record indicates that the State's testimony is contradictory of appellant's contentions and, under the evidence, we find no error in the judgment of the court below denying the petition. Allen v. State, 42 Ala.App. 9, 150 So.2d 399, cert. den. 275 Ala. 691, 152 So.2d 439, cert. den., Allen v. Alabama, 374 U.S. 854, 83 S.Ct. 1922, 10 L.Ed.2d 1074. Even if the appellant's contentions regarding the coerced confession were true, we must point out that it would not be governed by the case cited in his brief, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964), as the offenses charged occurred in 1960.

We feel that the trial court properly denied appellant's petition for writ of error coram nobis.

This cause is due to be and the same is hereby

Affirmed.